DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

NATIONAL MINES CORPORATION and Old Republic Insurance Company, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

ISLAND CREEK COAL COMPANY, Respondent.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

Q AND G COAL COMPANY, INC. and Old Republic Companies, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

KESSLER COAL COMPANY, Respondent.

Nos. 76–1694, 76–1731, 76–1749 and 76–1788.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1976.

Decided April 5, 1977.

Rehearing Denied June 15, 1977.

Frank A. White, Atty., U. S. Dept. of Labor, Washington, D.C. (William J. Kilberg, Sol. of Labor, Laurie M. Streeter, Associate Solicitor, Mark E. Solomons, Jean S. Cooper and Mary A. Sheehan, Attys., U. S. Dept. of Labor, Washington, D.C., on brief), for petitioner.

John L. Kilcullen, Washington, D.C. (Kilcullen, Smith & Heenan, Washington, D.C., on brief) for respondents National Mines Corp., Island Creek Co., Q & G Coal Co. and Old Republic Ins. Co.

Scott L. Messmore, Charleston, W. Va., (Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for respondent Kessler Coal Co.

Gail Falk, Charleston, W. Va., for United Mine Workers of America as amicus curiae urging reversal.

Before HAYNSWORTH, Chief Judge, and BUTZNER and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge.

These consolidated petitions for review deal with the procedure for adjudicating claims under the Black Lung Benefits Act of 1972.[1] The principal issues are these: Is the Director, Office of Workers' Compensation Programs, Department of Labor, a proper party? We hold that he is. Secondly, do the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act govern the procedures for adjudication of black lung claims? The Benefits Review Board said yes, and we affirm. Finally, can hearing officers, instead of administrative law judges, adjudicate the claims? The Benefits Review Board said no. We reverse because we believe that the Secretary of Labor has authority to designate hearing officers.

The Federal Coal Mine Health and Safety Act of 1969[2] was amended by the Black Lung Benefits Act of 1972[3] to provide for the payment of benefits to coal miners who are totally disabled by pneumoconiosis and to the survivors of stricken miners. During the first phase of the program, the Department of Health, Education and Welfare adjudicated and paid claims filed between December 10, 1969, and June 30, 1973.[4] The procedures set forth in the Social Security

---

1. The four cases under review are: *Director v. National Mines Corp.* (No. 76–1694), reviewing *Close v. National Mines Corp.*, BRB No. 76–181 BLA, 3 BRBS 448 (April 27, 1976); *Director v. Island Creek Coal Co.* (No. 76–1731), reviewing *Clear v. Island Creek Coal Co.*, BRB No. 76–186 BLA, 4 BRBS 40 (May 28, 1976); *Director v. Q & G Coal Co., Inc.* (No. 76–1749), reviewing *Murphy v. Q & G Coal Co., Inc.*, BRB No. 76–136 BLA (June 9, 1976); *Director v. Kessler Coal Co.* (No. 76–1788), reviewing *Ferrell v.*

*Kessler Coal Co.*, BRB No. 76–242, BLA, 4 BRBS 42 (May 28, 1976).

2. 30 U.S.C. § 801 *et seq.*

3. Pub.L. 92–303, 86 Stat. 153 (May 19, 1972), 30 U.S.C. §§ 901–941.

4. 30 U.S.C. §§ 921–924.

Act for determination of disability benefits were used in adjudicating these claims.[5]

During the second, transitional phase of the program, responsibility for adjudicating and paying claims filed between July 1, 1973, and December 31, 1973, was transferred from HEW to the Department of Labor.[6] Beginning January 1, 1974, employers were obliged to pay benefits to eligible claimants.

Under the third phase of the program,[7] Congress intended that the states would decide claims filed after January 1, 1974, under their own compensation laws. The Act nevertheless provides that in the absence of adequate state coverage, the Secretary of Labor should adjudicate claims and employers should be responsible for their payment.[8] Unless the Secretary provides otherwise by regulation, the procedures set forth in the Longshoremen's Act, as amended, govern the adjudication of those disputed black lung claims filed during the second[9] and third[10] phases.

Before October, 1972, the Longshoremen's Act provided that compensation claims should be adjudicated by the Department of Labor's deputy commissioners.[11] Federal district courts had jurisdiction to review these administrative decisions.[12] Appeals could be taken to the courts of appeals.[13]

In October, 1972, the Longshoremen's Act was amended to provide for adjudication by administrative law judges.[14] The Amendments abolish review by district courts, and, in their stead, create an administrative forum, the Benefits Review Board, to hear appeals from the decisions of administrative law judges.[15] The courts of appeals are authorized to review decisions of the Benefits Review Board.[16]

In May, 1973, the Secretary of Labor requested the Civil Service Commission to appoint administrative law judges to begin hearing black lung claims on July 1, 1973. The Commission, however, took the position that, since the Black Lung Act was amended in May, 1972, only those provisions of the Longshoremen's Act effective at that time govern the adjudication of black lung claims. Therefore, the Commission refused to appoint judges on the ground that the October, 1972 Amendments to the Longshoremen's Act did not apply to the Black Lung Act.

Lacking administrative law judges to consider black lung claims, the Secretary of Labor promulgated regulations and authorized hearing officers, who were not administrative law judges, to adjudicate the claims. Hearing officers rendered approximately 350 decisions from July, 1973, until February, 1976. The Benefits Review Board then ruled that only administrative law judges could hear the claims, and that, upon timely objection, judgments entered by hearing officers would be vacated. *Fields v. A. K. P. Coal Co.*, BRB No. 75–155 BLA, 3 BRBS 269 (Feb. 26, 1976).

In each of the four cases consolidated for review, the Benefits Review Board, relying on *Fields*, vacated the decision and remanded the case for a hearing before a duly-appointed administrative law judge. The Director petitioned for review, naming as respondents the coal companies and their insurance carriers from whom the miners seek compensation.

---

5.  30 U.S.C. § 923(b).

6.  30 U.S.C. § 925.

7.  30 U.S.C. §§ 931–941.

8.  30 U.S.C. §§ 932–933.

9.  30 U.S.C. § 925(a)(4) and (5).

10.  30 U.S.C. § 932(a).

11.  Longshoremen's Act, ch. 509, § 19, 44 Stat. 1435 (1927) (current version at 33 U.S.C. § 919).

12.  Longshoremen's Act, ch. 509, § 21, 44 Stat. 1436 (1927) (current version at 33 U.S.C. § 921(b)).

13.  28 U.S.C. § 1291.

14.  33 U.S.C. § 919(d).

15.  33 U.S.C. § 921(b).

16.  33 U.S.C. § 921(c).

## I

The coal operators and their insurance carriers contend that the Benefits Review Board should be named as a respondent to this proceeding. This contention, however, has been foreclosed by *ITO Corp. v. Benefits Review Board*, 529 F.2d 1080, 1088–89 (4th Cir. 1975). In that case, a panel unanimously held that the Benefits Review Board should be dismissed as a respondent to a petition for review of its own decision. *Accord, Nacirema Operating Co., Inc. v. Benefits Review Board*, 538 F.2d 73, 75 (3d Cir. 1976); *Offshore Food Service, Inc. v. Benefits Review Board*, 524 F.2d 967 (5th Cir. 1975); *McCord v. Benefits Review Board*, 168 U.S.App.D.C. 302, 514 F.2d 198, 200 (1975). Subsequently, the court sitting en banc reheard *ITO*, but did not disturb this aspect of the panel's decision. *ITO Corp. v. Benefits Review Board*, 542 F.2d 903 (4th Cir. 1976). Accordingly, for the reasons stated in *ITO*, 529 F.2d at 1088–89, we adhere to the position that the Benefits Review Board is not a proper respondent.

A more difficult question concerns the standing of the Director to petition for review. In *ITO Corp. v. Benefits Review Board*, 542 F.2d 903, 906–09 (4th Cir. 1976), a majority of the en banc court held that the Director lacked standing to respond to a petition to review an order of the Benefits Review Board awarding compensation to a longshoreman. Because the Director had suffered no economic or other injury, the court concluded that he lacked the requisite stake to establish standing. The Third Circuit followed *ITO* in *Director v. Rochester & Pittsburgh Coal Co.*, 556 F.2d 565 (3d Cir. 1977), holding that the Director does not have standing to petition for the review of orders of the Benefits Review Board vacating awards under the Black Lung Act. In both *ITO* and *Rochester & Pittsburgh Coal Co.*, the government, and consequently the Director, had no direct financial interest in the outcome of the cases. In *ITO*, only the stevedoring companies were potentially

liable. In *Rochester & Pittsburgh Coal Co.*, the court emphasized that awards were entered only against the employer and that the government's liability was secondary. In contrast, the Director, as the government's representative, has a direct financial interest in all of the four cases before us.[17]

*Murphy, Ferrell*, and *Clear* were filed under Part B of the Act, which includes the second or transitional phase of the black lung program. During this phase, the liability of both the government and the employer is adjudicated, but the government alone is liable for benefits payable before January 1, 1974. The employer becomes liable for payments commencing January 1, 1974, without any further adjudication.[18] In both *Murphy* and *Ferrell*, the hearing officer found the claimants eligible for benefits. Because these cases were brought under Part B, he directed the Secretary to make payments during the transitional period and the coal operators to make payments thereafter. In addition, the coal companies were ordered to reimburse the Secretary for the payments he made after January 1, 1974. In *Clear*, the hearing officer found in favor of the Secretary against the claimant, denying any compensation during the transitional period.

*Close* was filed under Part C, dealing with claims filed on or after January 1, 1974. With respect to these claims, the employer is primarily liable, and the government's secondary liability arises only upon the failure of the employer to pay benefits.[19] In *Close*, the operator was found liable, and ordered to pay benefits to the disabled miner. The operator was also ordered to reimburse the Secretary for benefits which the government paid after March 1, 1974.

Accordingly, the hearing officers' awards in all four cases were favorable, in whole or in part, to the Director—in *Murphy, Ferrell*, and *Close* because he was adjudged entitled to reimbursement for funds expended, and in *Clear* because of an adju-

---

17. *See* cases cited, *supra* n.1.

18. 30 U.S.C. § 925.

19. 30 U.S.C. § 934.

dication in his favor. The vacation of these favorable awards by the Benefits Review Board makes the Director a "person adversely affected or aggrieved by a final order of the Board," within the meaning of the statute authorizing judicial review.[20] We, therefore, conclude that because the government has an economic interest, these cases differ from *ITO*, and, therefore, the Director has standing to seek review. Because the government has a direct economic interest in the cases before us, we do not reach the issue raised in *Rochester & Pittsburgh Coal Co.* as to whether the government's secondary liability would be sufficient to confer standing.

## II

■ The employers argue that the Benefits Review Board erred when it ruled that the 1972 Amendments to the Longshoremen's Act govern the procedures for the adjudication of claims under the Black Lung Act. Agreeing with the Civil Service Commission, they contend that only those provisions of the Longshoremen's Act in existence in May, 1972, when the Black Lung Act was enacted, apply to black lung claims. Therefore, they maintain that the October, 1972 Amendments to the Longshoremen's Act were not retroactively incorporated into the previously-enacted Black Lung Act. Though neither of the texts of the acts in question casts any light on this issue, we believe that the legislative history fully supports the conclusion of the Benefits Review Board.

The relevant canon of statutory construction is:

A statute of specific reference [the Black Lung Act] incorporates the provisions referred to from the statute [the Longshoremen's Act] as of the time of adoption without subsequent amendments, unless the legislature has expressly or by strong implication shown its intention to incorporate subsequent amendments with the statute.

2A Sands, Sutherland Statutory Construction § 51.08 (4th ed. 1973). *See, e. g., Hassett v. Welch,* 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858 (1938); *Kendall v. United States,* 37 U.S. (12 Pet.) 524, 624–25, 9 L.Ed. 1181 (1838). In this instance, the legislative history indicates that the canon's exception, rather than its general rule, is applicable.

The Longshoremen's Act prescribes the adjudicative procedures for all private, employer-funded workers' compensation programs administered by the Department of Labor. Indeed, the Act has been described as a "catch-all for Federal compensation coverage."[21] It has been incorporated into the other compensation programs simply by reference, just as it is incorporated into the Black Lung Act.[22]

The Subcommittee on Labor prepared a legislative history of the 1972 Amendments to the Longshoremen's Act containing the text of the amendment and other background material.[23] In the foreword to this legislative history,[24] the Chairman states:

The enactment of the Longshoremen's and Harborworkers' Compensation Act Amendments of 1972 marked the culmination of 12 years work to improve the benefits paid to the more than 800,000 workers protected under the Act.

**20.** 33 U.S.C. § 921(c).

**21.** Committee Print, 92d Cong., 2d Sess., Legislative History of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 (S. 2318, Pub.L. 92–576) at 302 (December, 1972, ed.).

**22.** *See, e. g.,* Defense Base Act, 42 U.S.C. § 1651 *et seq.;* District of Columbia Workmen's Compensation Act, D.C.Code 1961, §§ 36–501, 36–502; Outer Continental Shelf

Lands Act, 43 U.S.C. § 1331 *et seq.;* War Hazards Compensation Act, 42 U.S.C. § 1701 *et seq.;* Nonappropriated Fund Instrumentalities Act, 5 U.S.C. § 1871 *et seq.*

**23.** Committee Print, 92d Cong., 2d Sess., Legislative History of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 (S. 2318, Pub.L. 92–576) (December, 1972, ed.).

**24.** *Id.* at v.

The legislative history reveals that there were approximately 200,000 longshoremen protected by the Act.[25] Thus, the provisions of the Act extend to more than 600,000 workers who are protected by the other compensation statutes which incorporate the Longshoremen's Act.

In the foreword to the legislative history,[26] the Chairman continues:

A great many questions about the impact of this legislation will have to be answered in the future through appropriate interpretation and regulation by the Secretary of Labor, and ultimately by the Courts. This legislative history has been prepared in order to assist those charged with administration and interpretation of the Act . . . . .

The December, 1972, edition of the legislative history contains the text of the previously-enacted Black Lung Benefits Act of 1972 along with the texts of other previously-enacted compensation acts to which the Longshoremen's Act applies by incorporation.[27] This legislative history, we believe, unequivocally demonstrates the congressional intent to apply the Longshoremen's Act 1972 Amendments to the black lung compensation program in accordance with the incorporating statute. Indeed, no sound reason has been advanced why Congress should have wished to exclude any particular compensation program from utilizing the reformed procedures for adjudicating claims provided by these amendments.

We therefore conclude that the legislative history shows that Congress intended the 1972 Amendments to the Longshoremen's Act to apply to the black lung pro-

gram. We next turn to the question of who is authorized to conduct hearings of disputed black lung claims.

## III

■ The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act provide that administrative law judges shall adjudicate compensation claims in accordance with the Administrative Procedure Act. 33 U.S.C. § 919(d); 5 U.S.C. § 554. Deeming these statutes controlling, the Benefits Review Board ruled that judgments entered by hearing officers who are not administrative law judges are void.[28] If the Longshoremen's Act were the only applicable statute, the Benefits Review Board's ruling would unquestionably be correct, for an administrative hearing conducted by an unauthorized officer, despite objection, is invalid. *Wong Yang Sung v. McGrath,* 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950).

■ The starting point of our inquiry is not, however, the Longshoremen's Act or the Administrative Procedure Act. It is, instead, the Black Lung Act, and we must turn to that statute to determine the extent to which Congress intended the Longshoremen's Act to be utilized in the adjudication of black lung claims. The Black Lung Act does not inflexibly incorporate every provision of the Longshoremen's Act. Title 30 U.S.C. § 932(a) specifically states that the provisions of the Longshoremen's Act shall be applicable "except as the Secretary shall by regulation otherwise provide."[29] The

25. 118 Cong.Rec. 37283 (1972) (remarks of Sen. Eagleton), *reprinted in* Committee Print, *supra* n.23 at 383.

26. Committee Print, *supra* n.23 at v.

27. Committee Print, *supra* n.23 at 581–648.

28. *Fields v. A.K.P. Coal Co.,* BRB No. 75–155 BLA, 3 BRBS 269 (Feb. 26, 1976); *see also* cases cited, *supra,* n.1.

29. 30 U.S.C. § 932(a) provides:
    During any period after December 31, 1973, in which a State workmen's compensation law is not included on the list published by the Secretary under section 931(b) of this title, the provisions of [the Longshoremen's Act], as amended (other than the provisions contained in sections 1, . . . and 51 thereof) shall (except as otherwise provided in this subsection and except as the Secre-

inclusion of the word "otherwise" in this clause, together with the Secretary's statutory authority to promulgate regulations,[30] discloses congressional intention to empower the Secretary to depart from specific requirements of the Longshoremen's Act in order to administer the black lung compensation program properly. The legislative history also establishes that Congress intended to provide the Secretary adequate flexibility to assure the payment of benefits to eligible persons.[31]

When the first black lung claims matured for hearing, no officials had been appointed to conduct the proceedings. The Civil Service Commission, which has the exclusive authority to allocate administrative law judge positions, steadfastly refused to supply judges for the initial adjudication of the claims. Confronted with a large number of claims with nobody to hear them, the Secretary invoked his regulatory authority and appointed hearing officers. The regulation that he promulgated is drafted to assure the competency and independence of the hearing officers.[32] It requires that they be qualified to discharge the duties of administrative law judges, and it places them under the direct supervision of the chief administrative law judge of the Department of Labor. It directs them to conduct the proceedings over which they preside in accordance with the Administrative Procedure Act.

tary shall by regulation otherwise provide), be applicable to each operator of a coal mine in such State with respect to death or total disability due to pneumoconiosis arising out of employment in such mine. In administering this part, the Secretary is authorized to prescribe in the Federal Register such additional provisions, not inconsistent with those specifically excluded by this subsection, as he deems necessary to provide for the payment of benefits by such operator to persons entitled thereto as provided in this part and thereafter those provisions shall be applicable to such operator.

Regulations governing the procedures for the third phase are set forth in 20 C.F.R. §§ 725.-451–725.494.

The Secretary's authority to adjudicate disputed claims during the transitional period—July 1, 1973 to December 31, 1973—is substantially the same. 30 U.S.C. § 925; 20 C.F.R. §§ 720.250–720.299.

**30.** The Secretary is given general power to promulgate regulations in 30 U.S.C. § 936(a):

(a) The Secretary of Labor and the Secretary of Health, Education, and Welfare are authorized to issue such regulations as each deems appropriate to carry out the provisions of this subchapter. Such regulations shall be issued in conformity with section 553 of Title 5, notwithstanding subsection (a) thereof.

**31.** In the Senate Conference Committee Report, *reprinted in* Committee Print, 94th Cong., 1st Sess., Legislative History of the Federal Coal Mine Health and Safety Act of 1969 at 1624 (Pub.L. 91–173), the following analysis is set forth in explanation of the regulatory power given the Secretary in 30 U.S.C. § 932(a):

The Secretary of Labor is also authorized to publish additional provisions by regulation, together with all or part of the applicable provisions of said Act other than those specifically excluded, when he believes such publication will facilitate the administration of this part and will insure that each such operator shall be liable for, and secure the payment of, benefits to eligible persons. The objective of this provision is to provide adequate flexibility in the Secretary of Labor in carrying out this provision.

**32.** The Secretary adopted the following regulation with respect to hearing officers at 20 C.F.R. § 715.101(a)(27):

"Hearing officer" means a hearing officer appointed by the Secretary of Labor to conduct formal hearings in respect of claims for benefits under section 415 and Part C of the Act. Wherever the term "administrative law judge" appears in this part or Parts 718, 720 or 725 of this chapter, such term shall have the same meaning as the term "hearing officer." Such hearing officers may or may not meet the requirements for hearing examiners appointed under 5 U.S.C. 3105 but shall, in the opinion of the Secretary, be qualified to carry out the responsibilities and follow the procedures prescribed for administrative law judges by this part and Parts 718, 720, and 725 of this chapter. Hearing officers shall to the extent possible conduct all formal proceedings over which they preside in accordance with the applicable provisions of the Administrative Procedures Act, 5 U.S.C. 554, et seq. as such provisions are interpreted by Parts 720 and 725 of this chapter. Hearing officers shall be organizationally placed in the Office of Administrative Law Judges and shall be under the direct supervision of the Chief Administrative Law Judge of the Department of Labor.

In *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973), the Court said:

> Where the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained as long as it is 'reasonably related to the purposes of the enabling legislation.'

In our judgment, the regulation promulgated by the Secretary satisfies the test stated in *Mourning.* The purpose of the enabling legislation, 30 U.S.C. §§ 925, 932(a), and 936, was to assure the fair and just determination of black lung claims. The regulation is reasonably related to this purpose. When it became apparent that the Civil Service Commission would not assign administrative law judges to hear the claims, the Secretary was obliged to act, lest the purpose of the Act be frustrated. While we agree with the Secretary that it would be preferable to submit these claims to administrative law judges, the statute does not make the services of these judges indispensable. The competency of the hearing officers who decided the cases now before us is unquestioned; their impartiality has not been challenged. The coal operators' suggestion that the Secretary's regulation does not assure the hearing officers' independent judgment is speculative and lacks evidentiary support in these records.

■ The Secretary's interpretation of his statutory authority was confirmed by Congress in Departments of Labor and HEW Appropriation Acts for 1974,[33] 1975,[34] and 1976.[35] These Acts stipulate that in order to facilitate payments authorized by the Black Lung Act, the Secretary could appoint qualified persons to conduct hearings, even though they did not meet the requirements of administrative law judges.[36]

These later acts of Congress should be accorded "significant weight" in determining the intent of earlier legislation. *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Moreover, these Appropriation Acts, in themselves, may be considered substantive amendments to the Black Lung Act. *United States v. Dickerson,* 310 U.S. 554, 555, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940).

■ We are not persuaded by the respondent's argument that the reference to the Secretary's authority in the Appropriation Acts was meant to apply only to those instances in which the government, and not an employer, is to be responsible for the payment of the claims. The language of the Appropriations Acts is not so narrowly limited; by their terms, they extend to all claims cognizable under the Black Lung Act. Furthermore, it is impracticable without a hearing to separate those contested cases in which the employer might have to pay from those in which the government may be liable. Indeed, the government is potentially liable in every case, because, in the event of the employer's default, the government must assume responsibility for the payments under Title 30 U.S.C. § 934.

**33.** Act of Dec. 18, 1973, Pub.L. 93–192, 87 Stat. 746.

**34.** Act of Dec. 7, 1974, Pub.L. 93–517, 88 Stat. 1634.

**35.** Act of Jan. 28, 1976, Pub.L. 94–206, 90 Stat. 3.

**36.** The Appropriation Acts set out in relevant part:

SPECIAL BENEFITS

For the payment of compensation, benefits and expenses (except administrative expenses) as authorized by title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended [and other acts], $141,250,- 000, together with such amounts as may be necessary to be charged to the subsequent year appropriation for the payment of compensation and other benefits for any period subsequent to June 15 of the current year.

Whenever the Secretary of Labor finds it will promote the achievement of the above activities, qualified persons may be appointed to conduct hearings thereunder without meeting the requirements for hearing examiners appointed under 5 U.S.C. 3105: *Provided,* That no person shall hold a hearing in any case with which he had been concerned previously in the administration of such activities.

In reaching our conclusion, we have accorded no weight to the Joint Congressional Resolution of October 15, 1976.[37]

The judgments of the Benefits Review Board are vacated, and the cases are remanded for consideration on their merits.[38]

37. On October 15, 1976, Congress passed a joint resolution, Pub.L. 94–504, 90 Stat. 2428:
    *Be it resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That qualified individuals appointed by the Secretary of Labor may hear and determine claims for benefits under part C of title IV of the Federal Coal Mine Health and Safety Act of 1969 and under section 415 of such Act. For purposes of this Joint Resolution, the term "qualified individual" means such an individual, regardless of whether that individual is a hearing examiner appointed under section 3105 of title 5, United States Code. Nothing in this Joint Resolution shall be deemed to imply that there is or is not in effect any authority for such individuals to hear and determine such claims under any provision of law other than this Joint Resolution.

38. While a petition for rehearing was pending in this case, the Senate Committee on Human Resources (successor to the Senate Committee on Labor and Public Welfare) reported several amendments to Title IV of the Federal Coal Mine Health and Safety Act. In a summary of its action, the Committee said that one of the broad purposes of the bill is "to reaffirm the legislative intent with respect to certain provisions which have been administratively misinterpreted . . . ."

The Committee explained that one of the proposed amendments makes clear that the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act relating to the use of administrative law judges shall apply to the adjudication of black lung claims. The proposed amendments also permit the use of hearing officers for one year following the enactment of the bill. S.Rep.No.95–209, 95th Cong., 1st Sess. 1 & 18 (May 16, 1977).

The Committee's report offers further support for the conclusion reached in this opinion.