**Gerry E. PEARCE, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and McDonnell Douglas Corporation, and Industrial Indemnity Company, Respondents.**

**No. 77–2074.**

United States Court of Appeals, Ninth Circuit.

Aug. 31, 1979.

---

Bruce Nangle (argued), Clayton, Mo., for petitioner.

Laurie M. Streeter, U. S. Dept. of Labor, Washington, D. C., Mark C. Walters (argued), Washington, D. C., Lee H. Cliff, San Francisco, Cal. (argued), for respondents.

Before DUNIWAY and KENNEDY, Circuit Judges, and KING,* District Judge.

DUNIWAY, Circuit Judge:

Petitioner Gerry E. Pearce received biweekly workers' compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901 *et seq.* ("the Longshoremen's Act"), as extended by the Defense Base Act, as amended, 42 U.S.C. §§ 1651 *et seq.* He seeks review of a final order of the Benefits Review Board affirming a deputy commissioner's refusal to commute his biweekly benefits into a lump sum compensation award as permitted under § 14(j) of the Longshoremen's Act, 33 U.S.C. § 914(j).

* The Honorable Samuel P. King, Chief Judge, United States District Court for the District of Hawaii, sitting by designation.

Because the deputy commissioner who initially denied the commutation has his office in Chicago, we do not have jurisdiction to reach the merits. Because the deputy commissioner acted after the 1972 Amendments to the Longshoremen's Act had taken effect, we conclude that review of the Board's order lies in the Court of Appeals for the Seventh Circuit, not in this court. In the interest of justice, we transfer this case to the Seventh Circuit for further proceedings.

## I. *The Facts.*

On November 14, 1970, Pearce sustained permanently and totally disabling injuries in an accident which occurred near a United States Air Force base in northeastern Thailand. As an employee covered by the Defense Base Act, *see* 42 U.S.C. § 1651, Pearce filed a claim for compensation with the United States Department of Labor Compensation District headquartered in Hawaii. Before the Hawaiian office had acted upon his claim, Pearce moved to Illinois. For the convenience of all concerned, the Office of Workers' Compensation Programs of the United States Department of Labor then transferred Pearce's claim to its Chicago office for investigation and resolution. Pearce does not dispute the propriety of the transfer.

A deputy commissioner whose office is located in Chicago eventually found Pearce to be permanently and totally disabled. In subsequent proceedings, the same deputy commissioner increased the amount of Pearce's benefits but rejected his application for a lump sum award in lieu of bi-weekly benefits. The Benefits Review Board affirmed the deputy commissioner's decision that a lump sum award would not be "in the interest of justice," the statutory standard under 33 U.S.C. § 914(j). The Board's decision is reported at 5 B.R.B.S. 573 (1977). Pearce then petitioned this court for review of the Board's decision.

## II. *What is the Proper Court to Hear this Case?*

The Director of the Office of Workers' Compensation Programs urges us to dismiss Pearce's petition, arguing that only the Court of Appeals for the Seventh Circuit is the proper court to hear Pearce's petition. Pearce argues that § 21(c) of the Longshoremen's Act, 33 U.S.C. § 921(c) places direct review of the Board's decision in this court. The Sixth Circuit's recent decision in *Home Indemnity Company v. Stillwell,* 6 Cir., 1979, 597 F.2d 87, would require Pearce to petition for review in the United States District Court for the Northern District of Illinois. To resolve these questions, we must determine the extent to which certain 1972 Amendments to the Longshoremen's Act are affected by the provisions of the Defense Base Act, a statute which incorporates the Longshoremen's Act by reference.

Congress passed the Defense Base Act in order to provide workers' compensation coverage for specified classes of employees working "outside the continental United States." *See* § 1, 55 Stat. 622, 42 U.S.C. § 1651(a)(4). Instead of drafting a new workers' compensation scheme, Congress extended the already established Longshoremen's Act, as amended, to apply to the newly covered workers. Section 1 of the Defense Base Act, 42 U.S.C. § 1651(a), now provides:

> Except as herein modified, the provisions of the Longshoremen's . . . Act, approved March 4, 1927 (44 Stat. 1424), as amended, shall apply in respect to the injury or death of any employee [covered under the Defense Base Act] . . . . .

Over the years, Congress has also extended the protections and procedures of the Longshoremen's Act to various other groups of workers. *See, e. g.,* the District of Columbia Workmen's Compensation Act, as amended, 35 D.C.Code 501 *et seq.;* the War Hazards Compensation Act, as amended, 42 U.S.C. § 1701 *et seq.;* the Outer Continental Shelf Lands Act, as amended, 43 U.S.C. § 1331 *et seq.;* the Nonappropriated Funds Instrumentalities Act, as amended 5 U.S.C. § 8171 *et seq.;* and the Federal Coal Mine Health and Safety Act, as amended, 30 U.S.C. § 801 *et seq.*

To assess the effects of the 1972 Amendments to the Longshoremen's Act upon the adjudication of Defense Base Act claims,

we begin with the law as it stood before those amendments. Under that law, § 19 of the Longshoremen's Act, 33 U.S.C. § 919 (1970 ed.), Longshoremen's Act claims were initially investigated and decided by deputy commissioners. Because the Defense Base Act contained no special modifying provision, § 19 applied to Defense Base Act claims through that Act's general incorporation provision, § 1, 42 U.S.C. § 1651(a).

Under the Longshoremen's Act, appeals from a deputy commissioner were to be "instituted in the Federal *district court for the judicial district in which the injury occurred* . . . ." § 21(b), 33 U.S.C. § 921(b) (1970 ed.) (emphasis added). Because, in most, if not all, Defense Base Act cases, the injury or death would not occur within any federal judicial district, Congress provided a different method of determining what court a Defense Base Act claimant or other interested party should resort to to pursue the appeal rights set forth in the old § 21(b):

> Judicial proceedings provided under section [ ] . . . 21 of the Longshoremen's . . . Act (33 U.S.C. § 921) in respect to a compensation order made pursuant to this chapter shall be instituted in the United States *district court of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved if his office is located in a judicial district,* and if not so located, such judicial proceedings shall be instituted in the judicial district nearest the base at which the injury or death occurs.

§ 3, 42 U.S.C. § 1653(b) (emphasis added). It turned out that all of the deputy commissioners had offices within judicial districts, and so all appeals in Defense Base Act cases were initially heard in the district courts where the deputy commissioners in question had their offices.

Neither Act made any special provision for circuit court review; so by virtue of 28 U.S.C. § 1291, the second level of review in Longshoremen's Act cases was by appeal from the district court to the Court of Appeals for the Circuit in which the injury occurred and in Defense Base Act cases to the Court of Appeals for the Circuit in which the deputy commissioner had his office. This is because the appeal, under 28 U.S.C. § 1294, is to the Court of Appeals for the Circuit in which lies the district court from which appeal is taken.

The Longshoremen's Act Amendments of 1972 made two pertinent changes in the procedures for adjudicating compensation claims. First, section 14 of the 1972 Amendments, 86 Stat. 1251, 1261, amended § 19(d), 33 U.S.C. § 919(d), to provide that "any hearing" held under the Act shall be conducted in accordance with the adjudicatory provisions of the Administrative Procedure Act, 5 U.S.C. § 554, by a hearing examiner qualified in accordance with 5 U.S.C. § 3105. As a result, hearings formerly held and decided by deputy commissioners are now held and decided by administrative law judges.[1]

Second, § 15(a) of the 1972 Amendments, 86 Stat. 1251, 1261–1262, amended § 19(b) by replacing appeals to the "district court for the judicial district in which the injury occurred" with appeals to a newly created national Benefits Review Board. Section 21(c) was also amended to provide that:

> (c) Any person adversely affected or aggrieved by a final order of the Board may obtain review of that order *in the United States court of appeals for the circuit in which the injury occurred,* by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. . . . (emphasis added)

As we have seen, formerly, the court of appeals for the circuit where the injury occurred had provided a second level of review by hearing appeals from district

---

1. In 1978, Public Law 95–251, § 2(a)(10), 92 Stat. 183, substituted the title administrative law judge for the title hearing examiner. While the Benefits Review Board processed this case before the change in titles, we will use the phrase "administrative law judge" to refer to both administrative law judges and hearing examiners.

court decisions under 28 U.S.C. §§ 1291 and 1294. After the amendments, the court of appeals for the circuit where the injury occurred still provided the second level of review, but by hearing petitions for review of Board decisions under amended § 21(c).

The 1972 Amendments to the Longshoremen's Act did not explicitly amend the Defense Base Act. If Defense Base Act procedures remained unaffected by the Amendments, § 3(b) of the Defense Base Act, 42 U.S.C. § 1653(b) would place jurisdiction to hear Pearce's petition in the District Court for the Northern District of Illinois because "the deputy commissioner whose compensation order is involved" had his office in Chicago. *See Home Indemnity Company v. Stillwell, supra.* Pearce and the respondent argue for the jurisdiction in the Courts of Appeals for the Ninth and Seventh Circuits, respectively, on the basis that § 1(a) of the Defense Base Act, 42 U.S.C. § 1651(a), incorporates by reference not only the Longshoremen's Act as it existed in 1941, but also the later 1972 Amendments to that incorporated Act.

Under long established canons of statutory construction, statutes which incorporate other statutes by reference are considered either "statutes of specific reference" or "statutes of general reference." As the Seventh Circuit explained in a case which hinged upon whether the Federal Coal Mine Health and Safety Act of 1969, as amended, incorporated by reference the *later* enacted 1972 Amendments to the Longshoremen's Act:

> [W]hen a statute adopts the general law on a given subject, the reference is construed to mean that the law is as it reads thereafter at any given time including amendments subsequent to the time of adoption. This is to be contrasted with adoption by reference of limited and particular provisions of another statute, in which case the reference does not include subsequent amendments.

*Director, Office Workers' Compensation Programs v. Peabody Coal Co.,* 7 Cir., 1977, 554 F.2d 310, 322, quoting 2A Sands, *Sutherland Statutes and Statutory Construction* at § 51.07 at 322 (4th ed. 1973), quoting *George Williams College v. Village of Williams Bay,* 1943, 242 Wis. 311, 7 N.W.2d 891, 894. *Accord, Krolick Contracting Corp. v. Benefits Review Board,* 3 Cir., 1977, 558 F.2d 685, 688; *Somermeier v. District Director of Customs,* 9 Cir., 1971, 448 F.2d 1243, 1244.

The legislative intent at the time of the passage of the Defense Base Act governs. Looking to that intent, we have no doubt that the Act is a statute of general reference. The original language of the Defense Base Act expressly incorporated later enacted amendments to the Longshoremen's Act. As originally passed in 1941, § 1 of the Defense Base Act provided:

> Be it enacted . . . , [t]hat except as herein modified, the provisions of the Act entitled "Longshoremen's and Harbor Workers' Compensation Act" approved March 4, 1927 (44 Stat. 1424), as amended, *and as the same may be amended hereafter,* shall apply in respect to the injury or death of any [covered] employee . . . .

55 Stat. 622 (emphasis added). We do not see how Congress' intent could have been expressed more clearly.

In 1942, Congress rewrote § 1 in order "to afford a clearer presentation" and as part of expanding the coverage of the act. *See* Senate Report No. 1448, 77th Cong. 2d Sess. at 35–36. *See, generally,* House Report No. 2581, 77th Cong. 2d Sess. at 18–20. As is often the case, however, the "presentation" was not "clearer." By deleting the bracketed material, Congress gave the section its present wording:

> That (a) except as herein modified, the provisions of the [Act entitled"] Longshoremen's and Harbor Workers' Compensation Act ["] approved March 4, 1927 (44 Stat. 1424), as amended [and as the same may be amended hereafter,] shall apply in respect to the injury of any employee engaged in any employment—

Congress obviously deleted the phrase "Act entitled" and the quotations marks as redundant. We conclude that the draftsmen omitted the phrase "and as the same may

be amended hereafter," because they thought that it, too, was redundant, because the phrase "as amended" already followed the name of the Act.

The House Judiciary Committee and Senate Committee on Education and Labor prepared detailed analyses of § 2412, the bill which included the amendments to the Act. *See* Senate Report No. 1448, *supra*; House Report No. 2581, *supra*. There is no mention whatever of limiting the Defense Base Act's incorporation by reference of the Longshoremen's Act as amended. We conclude that Congress intended no more than a stylistic change when it deleted the phrase "and as the same may be amended hereafter." In other words, we read 42 U.S.C. § 1651(b)(4) as if it still contained the phrase "and as the same may be amended hereafter," and hold that it incorporates the 1972 Amendments to the Longshoremen's Act.

Other factors also suggest reading the Defense Base Act as a generally incorporating statute. That Act went, and still goes, far beyond incorporating just a few selected provisions. Rather, it incorporated virtually the entire Longshoremen's Act. The language of the statute highlights the generality of the incorporation when it provides that it is the Longshoremen's Act which "shall apply" except as "modified" by the Defense Base Act. *See* § 1(a), 42 U.S.C. § 1651(a).

Finally, both of the original committee reports explained that

Section 1 of the bill [42 U.S.C. § 1651(a)] *extends the provisions of the Longshoremen's . . . Act* to private employment at . . . [certain] bases . . . in much the same manner that the law was made applicable to employees of private enterprises in the District of Columbia.

(emphasis added)

Senate Report No. 540, 77th Cong. 1st Sess. at 1 (1941); House Report No. 1070, 77th Cong. 1st Sess. at 2 (1941). If Congress had extended the Longshoremen's Act by directly amending the Longshoremen's Act's coverage provisions, the later procedural

1972 Amendments to the Longshoremen's Act would unquestionably apply to Defense Base Act cases.

We also note that, while not explicitly holding that the Defense Base Act is a general reference statute, the Supreme Court and a number of circuit courts have already applied the 1972 Longshoremen's Act Amendments in deciding Defense Base Act cases. *See Director, Office Workers' Compensation Programs v. Rasmussen,* 1979, 440 U.S. 29, 99 S.Ct. 903, 59 L.Ed.2d 122 aff'g 9 Cir., 1978, 567 F.2d 1385; *Puig v. Standard Dredging Corp.,* 1 Cir., 1979, 599 F.2d 467; *Air America, Inc. v. Director, Office Workers' Compensation Programs,* 1 Cir., 1979, 597 F.2d 773; *Landrum v. Air America, Inc.,* 5 Cir., 1978, 534 F.2d 67, 69; *Overseas African Construction Corp. v. McMullen,* 2 Cir., 1974, 500 F.2d 1291, 1297, 1298, n.14.

A series of recent court of appeals decisions under the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 *et seq.*, is closely analogous. The Black Lung Benefits Act was enacted on May 19, 1972. That act incorporated major provisions of the Longshoremen's Act. *See* 30 U.S.C. § 932. Congress did not enact the Longshoremen's Act Amendments until October 27, 1972. As we have seen, through § 21(b) and (c), 33 U.S.C. § 921(b) and (c), the Amendments changed existing law to provide for first review by the Benefits Review Board and direct court of appeals review of Benefits Review Board decisions. The courts of appeals in question recognized that their jurisdiction to directly review the Black Lung Act cases before them depended upon whether the coal mine health and safety act incorporated by reference the subsequent Longshoremen's Act Amendments which added § 921(c). In each case, the court of appeals concluded that the Coal Mine Act references were general, and thus held the subsequent amendments incorporated by reference. *Director, Office Workers' Compensation v. Peabody Coal Co.,* 7 Cir., 1977, 554 F.2d 310, 317, 319–331; *Director, Office of Workmen's Compensation*

*Program v. Alabama By-Products Corp.*, 5 Cir., 1977, 560 F.2d 710, 715; *Krolick Contracting Corp. v. Benefits Review Board*, 3 Cir., 1977, 558 F.2d 685, 687–688; *Director, Office of Workers' Compensation Programs v. National Mines Corp.*, 4 Cir., 1977, 554 F.2d 1267, 1272–1273. *See also U. S. Pipe & Foundry Co. v. Webb*, 5 Cir., 1979, 595 F.2d 264, 269.

What Judge Butzner said in *National Mines Corp., supra*, is, we think, equally applicable to the relationship between the Defense Base Act and the 1972 Longshoremen's Act Amendments:

> The December, 1972, edition of the legislative history [of the 1972 Amendments] contains the text of the previously-enacted Black Lung Benefits Act of 1972 along with the texts of other previously-enacted compensation acts to which the Longshoremen's Act applies by incorporation. This legislative history, we believe, unequivocally demonstrates the congressional intent to apply the Longshoremen's Act 1972 Amendments to the black lung compensation program in accordance with the incorporating statute. Indeed, no sound reason has been advanced why Congress should have wished to exclude any particular compensation program from utilizing the reformed procedures for adjudicating claims provided by these amendments.
>
> 554 F.2d at 1273.

The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.*, also incorporates the Longshoremen's Act by reference. *See* 43 U.S.C. § 1333(c). Like the Federal Coal Mine Health and Safety Act, it too has been construed as having incorporated the subsequently enacted amendments to § 21 of the Longshoremen's Act. *See Alabama By-Products Corp., supra,* 560 F.2d at 715, citing *Presley v. Tinsley Maintenance Service,* 5 Cir., 1976, 529 F.2d 433, and *Offshore Food Service, Inc. v. Benefits Review Board,* 5 Cir., 1975, 524 F.2d 967.

One of the purposes of the 1972 Amendments was to establish improved procedures for review of decisions under the Longshoremen's Act. To that end, the Amendments established the Benefits Review Board, with national jurisdiction, and provided for review of its decisions by the courts of appeal. It is scarcely conceivable that Congress intended that these procedures apply to all cases except those arising under the Defense Base Act. The only evidence to support such an intent is that Congress did not amend § 3(b) of the Defense Base Act to conform it to the provisions of amended § 21 of the Longshoremen's Act. To us, this in not evidence of an intent to preserve the old procedure in Defense Base Act cases. Rather, it is evidence that Congress assumed that, under § 1 of the Defense Base Act, the new procedures would apply and therefore inadvertently failed to amend § 3(b).

■ We conclude that the Defense Base Act, as a general reference statute, incorporated, and incorporates, the Longshoremen's Act, including amendments to it, specifically the 1972 Amendments. There then remains the question, to what extent, and how, does the Defense Base Act modify the Longshoremen's Act as amended?

In approaching this question, we are mindful that the Supreme Court has reminded us several times during this term that, "[a]s is true in every case involving the construction of a statute, our starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 1979, —— U.S. ——, ——, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). *Accord, Ernst & Ernst v. Hochfelder*, 1976, 425 U.S. 185, 187, 96 S.Ct. 1375, 47 L.Ed.2d 668, quoting *Blue Chip Stamps v. Manor Drug Stores*, 1975, 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (Powell, J., concurring). At the same time, "As in all cases of statutory construction, our task is to interpret the words of the [ ] statute [ ] in light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rights Organization*, 1979, —— U.S. ——, ——, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508. *See, e. g., Monarch Life Insurance Co. v. Loyal Protective Life Insurance Co.,* 2 Cir., 1963, 326 F.2d 841, 845.

When the Defense Base Act was enacted in 1941, section 21 of the Longshoremen's

Act, 33 U.S.C. (1926) § 921, as amended in 1936, 49 Stat. 1921, provided, in subsection (b), in pertinent part:

> (b) If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred (or in the district court of the United States for the District of Columbia if the injury occurred in the District).

This provides for jurisdiction in United States District Courts, and limits that jurisdiction to the district court of the district where the injury occurred.

Because injuries covered by the Defense Base Act would almost never occur within a judicial district, the Defense Base Act, in Section 3(b), 55 Stat. 622, 623 (42 U.S.C. § 1653(b)), modified the Longshoremen's Act, see *supra* pp. 765–766. For clarity, we repeat the pertinent language here.

> (b) Judicial proceedings provided under sections 18 and 21 of the Longshoremen's . . . Act in respect to a compensation order made pursuant to this Act shall be instituted in the United States district court of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved . . . . .

■ This is not a provision conferring jurisdiction on the United States district courts. As the provision itself shows, that jurisdiction is provided for by section 21 (33 U.S.C. § 921) of the Longshoremen's Act. The phrase "in the United States District Court" is a specific reference to section 21 of the Longshoremen's Act, and is lifted from it. If it stood alone in section 3(b) of the Defense Base Act, it would be redundant, having been adopted by section 1(a) of the Defense Base Act, quoted *supra* at page 767. The language immediately following: "of the judicial district wherein is lo-

cated the office of the deputy commissioner whose compensation order is involved" is the modifying language. It is the *only* reason for the enactment of § 3(b) of the Defense Base Act. It was needed because the provision of § 21(b) of the Longshoremen's Act limiting jurisdiction to the court of the district where the injury occurred could not apply. We thus conclude, contrary to the view of the Sixth Circuit, *supra*, page 765, that § 3(b) of the Defense Base Act does not confer jurisdiction on the district court but merely recognizes the jurisdiction conferred by the Longshoremen's Act, and limits that jurisdiction to the court of the district where the official who originally decided the case, the deputy commissioner, has his office.

When the 1972 Amendments to the Longshoremen's Act abolished the jurisdiction of the district courts (see pages 766–767 *supra*), that change was adopted by the Defense Base Act, as a general reference statute, and the phrase "in the United States District Court" in § 3(b) of the Defense Base Act became inoperative; in effect, it was repealed. The language immediately following, however, still had a role to perform.

Court review, under the 1972 Amendments to the Longshoremen's Act, is now in the courts of appeals. The particular court of appeals is now specified by § 21(c) as amended, 33 U.S.C. § 921(c), quoted at page 766, *supra*. It places jurisdiction in "the circuit in which the injury occurred," and this takes the place of the language of former § 21(b) quoted supra at page 766: "for the judicial district in which the injury occurred." It is this language, as we have seen, that was modified by § 3(b) of the Defense Base Act. We now treat § 3(b) as modifying, in the same way, the present § 21(c) "circuit where the injury occurred" language. Thus, for Defense Base Act cases, the proper court of appeals is in the circuit "wherein is located the office of the deputy commissioner whose compensation order is involved."[2] We do not think that

---

**2.** Under amended § 19(c), the initial decision, if there is no hearing, is by the deputy commissioner. Under amended § 19(d), if there is a hearing, the decision is by an administrative law judge. See fn. 1, *supra*.

the substitution of an administrative law judge for the deputy commissioner, when there is a hearing, makes any difference. The language just quoted should now be treated as reading "wherein is located the office of the deputy commissioner or the administrative law judge whose compensation order is involved."

■ From all of the foregoing, we conclude that the Court of Appeals for the Seventh Circuit is the proper court to hear and decide this case.

### III. *Transfer to the Seventh Circuit.*

■ We have held that we have power to transfer a pending case to another circuit even when the latter circuit has exclusive jurisdiction and venue to review the order in question. *Pacific Gas and Electric Co. v. Federal Power Com'n,* 9 Cir., 1958, 253 F.2d 536.[3] Thus, we can transfer this case even though exclusive jurisdiction is in the Seventh Circuit, not this circuit. We have the jurisdiction necessary to enable us to make the transfer. *See also Valley Vision, Inc. v. F. C. C.,* 9 Cir., 1968, 399 F.2d 511, in which we relied on 28 U.S.C. § 2112(a).

We transfer this case, rather than dismissing it, because we see no reason to require Pearce to start all over again. Moreover, were we to dismiss, and were Pearce then to petition the Seventh Circuit,

he would probably be held to be time barred by § 21(b) (33 U.S.C. § 921(b)). And if he were to seek a new hearing under § 19 (33 U.S.C. § 919), he might well be met with an argument that his application should be denied on the ground of administrative *res judicata,* or the doctrine of finality of administrative action. *See Laden v. Andrus,* 9 Cir., 1979, 595 F.2d 482, 486. Transfer keeps the case before us alive, and that is what ought to happen.

The motion to dismiss is denied. The clerk of this court shall certify the entries upon the docket with respect to this petition for review, and transmit and transfer such certificate, together with the petition and all papers now on file with the clerk of this court in this proceeding, to the clerk of the United States Court of Appeals for the Seventh Circuit.

**3.** Most of the Courts of Appeals have held or said that they have inherent power to transfer cases filed with them that belong in another circuit to the proper circuit.
D.C.Circuit:
*Abourezk v. F. P. C.,* 1975, 168 U.S.App.D.C. 246, 247, 513 F.2d 504, 505, n.1; *NLRB v. Wilder Mfg. Co.,* 1975, 147 U.S.App.D.C. 152, 155, 454 F.2d 995, 998; *Eastern Air Lines, Inc. v. C. A. B.,* 1965, 122 U.S.App.D.C. 375, 378, 354 F.2d 507, 510; *Pacific Gas & Electric Co. v. F. P. C.,* 1958, 106 U.S.App.D.C. 281, 282, 272 F.2d 510, 511.
First Circuit:
*Natural Resources Defense Council v. E. P. A.,* 1972, 465 F.2d 492, 495–496.
Second Circuit:
*Am. Tel. & Tel. Co. v. F. C. C., 1975,* 519 F.2d 322, 325.
Fifth Circuit:
*Tenneco Oil Co. v. E. P. A.,* 1979, 592 F.2d 897, 900, vacating *Tenneco Oil Co. v. E. P. A.,*

1978, 577 F.2d 931, 933; *Georgia-Pacific Corp. v. F. P. C.,* 1975, 512 F.2d 782, 783.
Sixth Circuit:
*Dayton Power & Light Co. v. E. P. A.,* 1975, 520 F.2d 703, 708.
Seventh Circuit:
*J. L. Simmons Co. v. N. L. R. B.,* 1970, 425 F.2d 52, 54.
Eighth Circuit:
*Meat Price Investigators Ass'n v. Spencer Foods,* 1978, 572 F.2d 163, 167, n.2; *McCoy v. U. S. Bd. of Parole,* 1976, 537 F.2d 962, 966–967; *Peabody Coal Co. v. E. P. A.,* 1975, 522 F.2d 1152, 1153–1154; *Farah Mfg. Co., Inc. v. N. L. R. B.,* 1973, 481 F.2d 1143, 1145; *Panhandle Eastern Pipe Line Co. v. F. P. C.,* 1965, 343 F.2d 905, 908–909.
Tenth Circuit:
*Panhandle Eastern Pipe Line Co. v. F. P. C.,* 1964, 337 F.2d 249, 251–252.